IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MARCUS D. BOOZER, | ) | Case No. 3:16-cv-806 |
| | ) | |
| Plaintiff, | ) | JUDGE JACK ZOUHARY |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

## I.    Introduction

Plaintiff Marcus D. Boozer seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI") under Title XVI of the Social Security Act.  This matter is before the court pursuant to 42 U.S.C. §1383(c)(3), 42 U.S.C. §405(g), and Local Rule 72.2(b).

For the reasons set forth below, it is recommended that the final decision of the Commissioner be **AFFIRMED**.

## II.    Procedural History

Boozer filed an application for SSI on April 26, 2013, alleging a disability onset date of May 30, 2012.  (Tr. 167)  Boozer alleged disability based on "lower back pain herniated disk increase pain in legs" and "back injury."  (Tr. 192)  Boozer's application was denied initially and upon reconsideration.  (Tr. 88, 96)  Thereafter, Boozer requested a hearing.  (Tr. 101)  A hearing

was held before Administrative Law Judge Earl Ashford ("ALJ") on March 23, 2015.  (Tr. 45-61)  On April 1, 2015, the ALJ denied Boozer's claim for benefits.  (Tr. 21-44)  The Appeals Council denied review of that decision on February 5, 2016, rendering the ALJ's April 1, 2015, decision the final decision of the Commissioner.  (Tr. 1-7)

III.   **Evidence**

    A.   **Personal, Educational, and Vocational Evidence**

Boozer was 34 years old on the date he filed his application.  He has a high school education and past work as a sales attendant and stock clerk.  (Tr. 36, 37, 193, 202)

    B.   **Medical Evidence**

        1.   **Medical Evidence Prior to Boozer's Back Surgery**

In July 2011, Boozer reported that his previously intermittent back pain during the prior six months had become a "constant, dull throbbing kind of pain."  (Tr. 410-11)  His treating family doctor, Mark Bigler's objective findings were: "Tenderness (+) slight, lower back muscles, little on right, more on left - Straight_Leg_Raise (-) no pain.- Tenderness-Spine (-)."  Based on that evaluation, Dr. Bigler prescribed Flexeril and Ibuprofen and instructed Boozer to return if the problem worsened.  (Id.)  In August 2011, Boozer explained that his intermittent back pain occurred primarily while working.  (Tr. 406)  X-rays of his lumbar spine in August and December 2011, showed minimal to mild degenerative changes.  (Tr. 437, 439)

In April 2012, he twice sought emergency treatment for back pain.  (Tr. 269, 276)  Boozer reported that his pain worsened with certain movements, including changing the brakes on his car.  (Tr. Id.)  On his April 14 visit, the ED physician's findings from the back exam were as follows: "Back: no CVA tenderness or spinal tenderness., Lumbar: Right, mild, tenderness, no

2

swelling, no ecchymosis, no laceration, no abrasion, no step-off, no vertebral point tenderness,

Testing: Straight leg raising, supine (positive on the right, at 30 degrees) . . . Musculoskeletal:

Normal ROM, no tenderness, no swelling, Patient is able to ambulate without difficulty.  The

patient had normal strength with dorsiflexion and plantar flexion bilaterally."  (Tr. 277-278).

Apparently, the ED physician, Jeffrey Pay, spoke to Dr. Bigler, and recorded the following

conclusions:

> Reexamination/ Reevaluation The patient had a relatively benign physical exam.
> The patient had the same reproducible pain that he has had in the past. The patient
> has not had any new trauma or injury. The patient has not had any bladder or
> bowel incontinence. The patient was going to be given Norflex, Ultram, and
> ibuprofen here in the ED. The patient and significant other became very upset and
> stated that this will not do anything for his pain. The patient has fired his pain
> management provider. The patient is requesting stronger medication. The patient
> has displayed drug-seeking type behavior. The patient has not followed up with
> primary care physician or neurosurgery who was provided for him in the past. The
> patient will be given intramuscular injection of Valium and morphine. The patient
> will be discharged home and to followup with the numbers listed below. The
> patient was discussed with his primary care physician who agreed to see him this
> week for further evaluation. The patient has no other questions or concerns at this
> time. The patient is neurovascularly and neurologically intact. The patient had no
> deficit other than mild tenderness to the right lower back. The patient had no
> evidence of,, contusion, or abrasion. The patient had no evidence of bladder or
> bowel incontinence.

(Tr. 278)

On May 22, 2012, Boozer followed up with Dr. Bigler and reported that his back had

"gone out," causing him to fall and miss work most of the weekend.  (Tr. 398-99)  He also

reported that physical therapy made his back pain worsen.  (Tr. 398)  Dr. Bigler prescribed

Vicodin.  (Tr. 399)

In September 2012, Boozer received two epidural injections but felt they had not helped.

(Tr. 392)  He reported that his legs seemed worse and he had increased back pain in the middle

of the night.  (Id.)  He also reported relief from a TENS unit, but stated that his back would throb

3

without the unit. (Id.) On September 28, 2012, Boozer was referred to orthopedic surgeon,

Michael R. Viau, M.D. (Tr. 337, 393) Dr. Viau indicated that Boozer's MRI showed "a

degenerative 5, 1 disc with disc protrusion centrally and symmetrically right and left midline,

otherwise relatively clean" and that an X-ray showed "degenerative disc changes and loss of disc

height at L5, S1." (Tr. 337) Boozer was offered fusion surgery or to repeat some of the more

conservative treatments he had undergone. (Id.) On March 5, 2013, Boozer underwent a

laminectomy at L5-S1 with fusion and hardware placement. (Tr. 339, 344, 468-69)

### 2. Medical Evidence After Boozer's Back Surgery

At six weeks post-surgery, Dr. Viau reported that Boozer was "doing well" with some

expected pain. (Tr. 511) He also stated that Boozer was walking two hours a day but Dr. Viau

expressed concern that Boozer was possibly "overdoing it" and recommended Boozer space out

his walking. (Id.) It was also reported that Boozer was taking Percocet for the pain. (Id.) Three

months post-surgery (in May 2013) Dr. Viau's chart notes indicate: "HPI: Marcus is 3 months

status post LS,S l instrumented spinal fusion. He indicates over the last month he's had some left

anterior thigh pain stopping at or about the knee. EXAM: Restricted lumbar flexion, Negative

SLR [straight leg raise test]. Hip is nonirritable with passive range." (Tr. 473)

In June 2013, Boozer returned to Dr. Bigler and gave the following history:

"Pt. here today to adjust medications. Pt. had surgery on the 5th and was released on the
8th for decompressed spinal fusion. Pt was given Percocet for pain. Pt experiencing
severe pain that shoots down his legs, sharp stabbing pain in back and legs ... states it
feels more intense since prior to the surgery. Pt states there is no infection in incision and
is wearing a brace. Pt states he has many restrictions. Pt can lay down without brace, but
needs it for all other purposes. Back is inflamed where screws were placed in ... pt. states
you can see them sticking out a bit. had staples out 4 days ago, expected it to be a little
bit hard, wasn't, next fu 4/18, restrictions still no bending, no lifting >5 pounds, no
driving, can't do anything[.] walking: after while legs start shaking, then back starts
hurting more.

(Tr. 453)  Although the treatment notes from the June 12, 2013, visit contain no result of a physical examination of the patient's back, Dr. Bigler increased Boozer's Percocet dosage from one every six hours to 1-2 every four hours as needed for pain.  (Tr. 454-455)

Boozer also attended post-operative physical therapy sessions in June and July 2013.  (Tr. 464-66, 491-502)  The physical therapist reported that Boozer ambulated without assistive devices, but with a mild to moderate antalgic gait.  (Tr. 463)  In June 2013, Boozer noted that he was unable to drive because he was having problems working the clutch with his left leg.  (Tr. 493)  Boozer also reported that he felt that although the pool exercises helped, his pain returned by the time he got home.  (Tr. 501)  He stated that he had to cancel pool therapy appointments and had difficulty completing home exercises due to the demands of his wife and children.  (Id.)  On June 25, 2013, it was reported that Boozer's physical therapy progress was "limited…due to poor compliance with [home exercise program] and poor attendance in therapy (has cancelled 50% of his appts)."  (Tr. 503)

In July 2013, Dr. Viau discontinued physical therapy after Boozer reported that the therapy was aggravating his back.  (Tr. 509)  Dr. Viau reviewed a recent x-ray and noted that the spinal hardware was in good position and there was evidence of fusion.  (Id.)  Dr. Viau ordered Boozer to complete activities as pain allowed and follow up 5 weeks later.  (Id.)

In August 2013, Boozer attended a consultative examination with Marsha D. Cooper. (Tr. 484-90)  He exhibited decreased flexion of his lumbar spine.  (Id.)  His neurological and other findings were normal.  (Id.)

By September 2013, Boozer reported that his symptoms had not improved, so an MRI was ordered.  (Tr. 508)  In interpreting the subsequent MRI, Dr. Viau stated that "[s]ome epidural lipmatosis [was seen] but otherwise unremarkable.  No new changes since pre-op study

other than post-surgical changes." (Tr. 507)  X-rays from May 2013 through March 2014 revealed that the surgical implant was in a good position and there was reasonable evidence of fusion. (Tr. 542-46)

In June 2014, Boozer returned to Dr. Viau, reporting that his pain was a 10 on a 1-10 scale. (Tr. 549)  Dr. Viau noted that a post-operative MRI showed "typical postsurgerical changes, no clear evidence that further surgery was in order." (Id.)  Dr. Viau also discussed options with Boozer including referral for chronic pain management, simply living with his pain, spinal cord simulator trial, or removal of hardware and inspection of fusion. (Id.)  However, Dr. Viau recommended that Boozer wait until September to see how he felt and repeat the MRI if his symptoms did not improve. (Id.)

In September 2014, Boozer returned to Dr. Viau reporting that he continued to experience back pain radiating into his left lower extremity. (Tr. 548)  Dr. Viau recommended a repeat MRI. (Tr. 548)  By February 2015, it was reported that Boozer was unable to get his MRI authorized. (Tr. 589)  Dr. Viau noted that he would look into why the MRI was not authorized and that Boozer should return after the MRI is completed. (d.)  In March 2015, Boozer informed Dr. Bigler that he was required to complete additional physical therapy before another MRI would be approved. (Tr. 597)[1]

---

[1] The transcript also includes medical treatment notes from after the April 1, 2015, hearing decision. (Tr. 604-39)  However, this court's review of the Commissioner's decision is limited to the evidence presented to the ALJ. *See Foster v. Halter,* 279 F.3d 348, 357 (6th Cir. 2001); *Cline v. Commissioner*, 96 F.3d 146,148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *see also Osburn v. Apfel*, No. 98-1784, 1999 WL 503528, at *4 (6th Cir. July 9, 1999) ("Since we may only review the evidence that was available to the ALJ to determine whether substantial evidence supported [his] decision, we cannot consider evidence newly submitted on appeal after a hearing before the ALJ."). There are two types of remand: a sentence four remand made in connection with a judgment affirming, modifying, or reversing the commissioner's decision; and a sentence six remand where the court makes no substantive ruling as to the correctness of the Commissioner's decision.  42 U.S.C. §405(g); S*ee, e.g., Hollon v. Commissioner*, 447 F.3d 477, 486 (6th Cir. 2006). In the sentence four context, the court cannot consider evidence that was not submitted to the ALJ. *See Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir.

### C.    Opinion Evidence

#### 1.    Treating Physician – Dr. Bigler

Mark A. Bigler, M.D., Boozer's primary care physician, issued two opinions on Boozer's

behalf.  (Tr. 582-85).  On July 17, 2012, (pre-back surgery) Dr. Bigler opined that Boozer could

not stand, walk, or sit for even 30 minutes; could not use his hands for simple grasping, pushing,

pulling, or fine manipulation; could not reach above shoulder level or lift anything; and was

limited in multiple work-related mental functioning.  (Tr. 584-85)  On May 10, 2013, following

Boozer's back surgery, Dr. Bigler endorsed somewhat less stringent limitations.  (Tr. 582-83)

Dr. Bigler opined that Boozer could sit, stand, and walk for 30 minutes; lift less than 5 pounds,

could not reach above shoulder level but could use hands for simple grasping.  (Tr. 582)  Dr.

Bigler also stated that Boozer's physical limitations interfere with his mental abilities including

his ability to remember work locations/procedures, maintain attention/concentration, carry out

instructions, and interact with the public.  (Id.)  In both opinions, Dr. Bigler concluded that

Boozer could not work on a part-time or full-time basis.  (Tr. 583, 585)

---

2007); Foster, 279 F.3d at 357.  The court can only consider such evidence in determining whether a
sentence six remand is appropriate.  Id.  Under Sentence Six of 42 U.S.C. § 405(g), "[t]he court may ... at
any time order additional evidence to be taken before the Commissioner of Social Security, but only upon
a showing that there is new evidence which is material and that there is good cause for the failure to
incorporate such evidence into the record in a prior proceeding."  The plaintiff has the burden to
demonstrate that the evidence presented in support of a remand is "new" and "material," and that there
was "good cause" for her failure to present this evidence in the prior proceedings.  See Hollon, 447 F.3d
at 483; see also Ferguson v. Commissioner, 628 F.3d 269, 276 (6th Cir. 2010).

In his brief, Boozer states that underwent a functional capacity evaluation within two months of the
administrative law judge's decision.  He states without further explanation that, "This evidence is new
and material and there is good reason for not submitting it to the administrative law judge."  ECF Doc.
No. 12, Page ID# 715.  This cursory statement is not followed by any additional argumentation or further
discussion of the functional capacity evaluation.  Thus, Boozer's statement falls far short of meeting his
burden.  As such, only evidence that was before the ALJ at that time of his decision should be considered
for purpose of this review.

### 2.   Treating Physician – Dr. Viau

Boozer's orthopedic surgeon, Dr. Viau issued several opinions.  On March 10, 2013, Dr. Viau issued an opinion that Boozer could not engage in prolonged sitting or standing; could not push/pull, lift, or reach above shoulder level, but could complete simple grasping and fine manipulation.  (Tr. 580)  Dr. Viau also stated that Boozer was "unable to work" but could engage in job searching and skills training.  (Tr. 581)

On March 18, 2013, Dr. Viau issued an opinion in a treatment note, stating that Boozer was precluded from "bending, twisting, and heavy lifting."  (Tr. 335)

On October 2, 2013, Dr. Viau issued an opinion that Boozer could not engage in prolonged sitting or standing; could not push/pull, lift, or reach above shoulder level; but could complete simple grasping and fine manipulation.  (Tr. 580)

On June 11, 2014, Dr. Viau again reported Boozer was unable to work.  (Tr. 577)  He opined that Boozer could not sit for longer than 15 minutes.  (Id.)  Dr. Viau included additional restrictions but they are somewhat illegible and the parties provide differing interpretations on what the illegible language states.[2]

### 3.   Consultative Examination – Dr. Cooper

On August 28, 2013, Boozer underwent a consultative examination by Marsha D. Cooper, M.D. (Tr. 484-90)  Boozer presented with a normal gait without need for an assistive device.  (Tr. 490)  He exhibited decreased flexion of his lumbar spine, but his neurological and other findings were normal.  (Tr. 484-87)  A function-by-function analysis of Boozer's abilities and limitations was not provided.

---

[2] See ECF Doc. No. 12, Page ID# 717 (Boozer states that Dr. Viau opined that he could not bend or lift); ECF Doc. No. 13, Page ID# 750 (The ALJ and Commissioner read the same language as restricting boozer from heavy lifting). These restrictions and their interpretations are discussed further in the legal analysis section of this report & recommendation.

### 4.    State Agency Consultant – Dr. Lehv

On September 6, 2013, state agency consultant Michael Lehv, M.D. reviewed Boozer's claim file and completed a residual functional capacity assessment.  (Tr. 64-74)  Dr. Lehv determined that Boozer could complete a light range of work with the following limitations: occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, stand/walk and sit about 6 hours in an 8-hour workday; only occasionally climb ladders/ropes/scaffolds, and stoop; and frequently crawl.  (Tr. 71)  It was also noted that Boozer should avoid all exposure to hazards.  (Tr. 72)  Dr. Lehv stated that Boozer's statements regarding his symptoms were "in line with medical evidence," but opined that Boozer's condition was "expect to improve post surgery." (Tr. 70)  Ultimately, Dr. Lehv determined that Boozer was not disabled.  (Tr. 74)

### 5.    State Agency Consultant – Dr. Torello

Lynne M. Torello, M.D., state agency consultant, reviewed Boozer's claim file on November 19, 2013.  (Tr. 76-86)  Dr. Torello concluded that Boozer was not disabled and could perform light work.  (Tr. 85)  But she found slightly more stringent limitations than Dr. Lehv did such as never climbing ladders/ropes/scaffolds and only occasionally climbing stairs/ramps and crouching.  (Tr. 83)

### D.    Testimonial Evidence[3]

Boozer testified that he previously worked part-time for Lowe's in the lumber department from 2011 until early 2013.  (Tr. 51)  Boozer also testified that he worked in the past as a sales associate/stocker for Sears.  (Tr. 50-51)  Boozer stated that he weighed 227 pounds and had gained 37 pounds in the six months prior to the hearing.  (Tr. 49)  When the ALJ questioned

---

[3] Vocational Expert James Fuller also testified at the hearing.  (Tr. 56-60)  However, since Boozer's appeal does not relate to Mr. Fuller's testimony, the testimony will not be summarized herein.

Boozer about the inconsistency between his testimony and a previous report from April 2013 listing his weight as 235 pounds, Boozer asserted that the prior report was not accurate because he recalled that he was more active at that time.  (Id.)  Boozer testified that he never had a driver's license; however, he was previously fined for driving with no insurance.  (Tr. 50)  He also testified that he stopped smoking cigarettes six months prior to the hearing.  (Tr. 52-53)

At the hearing, Boozer asserted that he could not work due to constant back pain and shooting pain down his leg.  (Tr. 52)  Boozer testified that he could not stand or walk for more than 15 minutes and could not lift without putting strain on his back.  (Id.)  Boozer also stated that he could not assist with household chores or cooking because of his limited standing ability. (Tr. 53-54)  He further testified that he needed assistance bathing because he could not bend or twist to wash his lower body.  (Tr. 53)  Boozer claimed that his doctor was going to order another MRI and that based on the results of the MRI he would either have to get another back surgery or "live with the pain."  (Tr. 55)

## IV.    Standard for Disability

Under the Act, 42 U.S.C. § 423(a), eligibility for benefit payments depends on the existence of a disability.  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(a).  Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work

experience, engage in any other kind of substantial gainful work which exists in the national economy[4]….

42 U.S.C. § 423(d)(2)(A).

In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations.  The five steps can be summarized as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert,* 482 U.S. 137, 140-142 (1987).  Under this sequential analysis, the claimant has the burden of proof at Steps One through Four.  *Walters v. Comm'r of Soc. Sec.* 127 F.3d 525, 529 (6th Cir. 1997).  The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC and vocational factors to perform work available in the national economy.  *Id.*

---

[4] "'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country."  42 U.S.C. § 423 (d)(2)(A).

IV. **The ALJ's Decision**

The ALJ issued a decision on April 1, 2015.  A summary of his findings are as follows:

1.  Boozer had not engaged in substantial gainful activity April 23, 2013, the application date.  (Tr. 26)

2.  Boozer has the following severe impairments:  degenerative disc disease, status post fusion, with pain; and asthma/bronchitis.  (Tr. 26

3.  Boozer does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  (Tr. 27)

4.  Boozer has the residual functional capacity ("RFC") to perform light work except:  postural limitation of no climbing ladders, ropes or scaffolds. Occasional climbing of ramps and stairs.  Occasional balancing, stooping, kneeling, and crouching.  No crawling.  Occasional use of the bilateral lower extremities for operation of foot controls.  Manipulative limitation of frequent use of the bilateral upper extremities for reaching, handling and fingering. Environmental limitation to avoid all exposure to hazards, such as moving machinery and unprotected heights.  Additional environmental limitation to avoid moderate exposure to irritants such as fumes, odors, dusts, and gases.  (Tr. 29)

5.  Boozer is unable to perform any past relevant work.  (Tr. 36)

6.  Boozer was born on July 2, 1978, and was 34 years old, which is defined as a younger individual age 18-49, on the date the application was filed.  (Tr. 37)

7.  Boozer has at least a high school education and is able to communicate in English.  (Tr. 37)

8.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.  (Tr. 37)

9.  Considering Boozer's age, education, and work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform.  (Tr. 37)

Based on these findings, the ALJ determined that Boozer had not been under a disability since

April 23, 2013, the date the application was filed.  (Tr. 39)

12

VI.     **Law & Analysis**

    A.     **Standard of Review**

This court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.,* 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994).

    The Act provides that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §§ 405(g) and 1383(c)(3). The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter,* 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen,* 800 F.2d 535,545 (6th Cir. 1986); *see also Her v. Comm'r of Soc. Sec.,* 203 F.3d 288, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached." *See Key v. Callahan,* 109 F.3d 270, 273 (6th Cir. 1997). This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen,* 800 F.2d at 545 (*citing Baker v. Heckler,* 730 F.2d 1147, 1150 (8th Cir. 1984).

13

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the court must determine whether proper legal standards were applied.  If the Commissioner does not apply the correct legal standards, reversal is required.  *See e.g. White v. Comm'r of Soc. Sec.* 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue,* 774 F.Supp.2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996); *accord Shrader v. Astrue,* No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue,* No. 1:10-cv-734, 2011 U.S. Dist. LEXIS 141342 (S.D. Ohio Nov. 15, 2011); *Gilliams v. Astrue,* No. 2:10-CV-017, 2010 U.S. Dist. LEXIS 72346 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-cv-19822010, 2010 U.S. Dist. LEXIS 75321 (N.D. Ohio July 9, 2010).

## B.     The ALJ properly evaluated the medical opinions

Boozer argues that the ALJ improperly analyzed the opinions of his treating physicians and the non-treating physicians.  ECF Doc. No. 12, Page ID# 710.  Boozer contends that in both cases, the ALJ's failure to discuss all of the regulatory factors in described in 20 C.F.R. §

14

416.927(c) constitutes reversible error. Id. at Page ID# 716-21. The Commissioner responds that the ALJ properly considered the regulatory factors. ECF Doc. No. 13, Page ID# 748-53.

Social Security Administration regulations dictate how medical opinions must be weighed. 20 C.F.R. § 416.927(c). In general, the regulations provide greater deference for a treating physician over an examining physician and greater deference to an examining physician over a non-examining physician. Id.; *Gayheart v. Comm'r of Soc. Sec*., 710 F.3d 365, 375 (6th Cir. 2013). In fact, if treating source opinions are (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight. 20 C.F.R. §416.927(c)(2); *White v. Comm'r of Soc. Sec*., 572 F.3d 272, 286 (6th Cir. 2009).

If the treating source opinion is not given controlling weight, then the ALJ must use several factors to determine the weight to give the opinion including: the length, frequency, nature, and extent of the treatment relationship; supportability; consistency; specialization; and other factors which support or contradict the opinion. 20 C.F.R. § 416.927(c). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Gayheart,* 710 F.3d at 376 (quoting SSR 96–2p, 1996 WL 374188 at *5 (SSA)). These requirements are referred to as the treating physician rule.

"The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544–45 (6th Cir. 2004) (citing *Snell v.*

*Apfel*, 177 F.3d 128, 134 (2d Cir.1999)) (internal quotations omitted).  Because the reason-giving

requirement exists to "ensur[e] that each denied claimant receives fair process," the Sixth Circuit

has held that an ALJ's "failure to follow the procedural requirement of identifying the reasons for

discounting the opinions and for explaining precisely how those reasons affected the weight"

given "*denotes a lack of substantial evidence,* even where the conclusion of the ALJ may be

justified based upon the record."  *Id.* (quoting *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 243

(6th Cir.2007) (emphasis added)).

    Boozer contends that the ALJ did not provide good reasons for giving less weight to his

treating physicians (Dr. Bigler and Dr. Viau).  ECF Doc. No. 12, Page ID# 715-21.  Boozer

primarily argues that the ALJ's decision is reversible for failing to address all of the 20 C.F.R.

§416.927(c) factors for weighing medical evidence (i.e., supportability, consistency,

specialization, etc.).  Boozer asserts that although the ALJ addressed supportability and

consistency, he failed to consider other factors such as nature and extent of the treatment

relationship and specialization.  ECF Doc. No. 14, Page ID# 767.  Boozer's argument is not well

taken.

    First, Boozer's argument is factually inaccurate.  It is clear that the ALJ considered

factors such as the nature and extent of Boozer's treatment relationship and specialization.  The

ALJ noted that Dr. Viau was Boozer's orthopedic surgeon (Tr. 34) and that Dr. Bigler was

Boozer's primary care physician (Tr. 35).  The ALJ noted that Boozer began seeing Dr. Viau in

2012 and continued seeing him "every few months throughout 2013 and 2014."  (Tr. 30-31)  The

ALJ also made note of a history of treatment with Dr. Bigler.  (Tr. 30-31, 34-35).

    Second, Boozer's argument is legally erroneous.  Courts have made clear that an ALJ

need not discuss every regulatory factor to fulfill the good reasons requirement.  As the Sixth

Circuit stated in *Francis*, "Although the regulations instruct an ALJ to consider these factors, they expressly require only that the ALJ's decision include 'good reasons ... for the weight ... give[n] [to the] treating source's opinion—not an exhaustive factor-by-factor analysis." *Francis v. Comm'r Soc. Sec. Admin.*, 414 F. App'x 802, 804 (6th Cir. 2011) (internal quotations and citation omitted).  "There is no requirement, however, that the ALJ 'expressly' consider each of the §416.927(c) factors within the written decision." *Hankins v. Comm'r of Soc. Sec.*, No. 2:14-CV-68, 2015 WL 770311, at *10 (S.D. Ohio Feb. 23, 2015), report and recommendation adopted, No. 2:14-CV-068, 2015 WL 1412497 (S.D. Ohio Mar. 24, 2015).  Therefore, the fact that the ALJ did not express how he evaluated each factor is not grounds for reversal.

Boozer does not argue that there was no substantial evidence to support the ALJ's decision devalue the opinions of the treating sources.  Rather, he argues that the failure to consider all factors "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record."  ECF Doc. No. 14, Page ID# 766; *citing Rogers v. Comm'r*, 486 F.3d & *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 541 (6th Cir. 2007).  Despite that fact and in an abundance of caution, the undersigned will also undertake a review as to determine whether the ALJ provided good reasons for the weight given to his treating physicians supported by substantial evidence in the record.

### a.    Dr. Bigler

Boozer's primary care physician, Dr. Bigler, provided two opinions:  the first was provided prior to Boozer's back surgery and the second opinion was provided after Boozer's surgery.  (Tr. 582-58)  In the May 2013 post-surgical opinion, Dr. Bigler opined that Boozer could not sit, stand, or walk for 30 minutes; could lift less than 5 pounds, could not reach above shoulder level but could use hands for simple grasping.  (Tr. 582)  Dr. Bigler also stated that

17

Boozer's physical limitations interfered with his mental abilities including his ability to remember work locations/procedures, maintain attention/concentration, carry out instructions, and interact with the public.  (Id.)

### i.     Mental limitations

The ALJ gave Dr. Bigler's mental status opinions "no weight."  (Tr. 35)  The ALJ explained:

> [H]e is not a psychiatrist or psychologist, and those statements are made outside of his area of expertise.  The medical evidence of record does not show that the claimant had mental limitations, and Dr. Bigler's records indicate that the claimant had normal attention and concentration (24F).

The above explanation constitutes "good reasons" for rejecting Dr. Bigler's opinion of Boozer's mental health limitations.  Those reasons are supported by substantial evidence in the record. The ALJ clearly referenced several of the factors for weighing medical opinions including supportability, consistency, and specialization.  Dr. Bigler was not a mental health specialist, did not treat Boozer for any mental health issues, and treatment notes from Dr. Bigler and other providers failed to identify any mental health concerns.

The ALJ also correctly found that Dr. Bigler's mental health opinion was inconsistent with his own treatment notes.  In the opinion, the ALJ pointed to a specific treatment note from Dr. Bigler, which showed that Boozer was "alert and cooperative," had a "normal mood and affect," and "normal attention span and concentration."  (Tr. 600).  All of the psychological observations in Dr. Bigler's other treatment notes are consistent with the observations contained in the sample treatment note.  (Tr. 557, 12/03/13 – "alert and fluent.  No focal deficits…oriented to time, place, and person;" Tr. 386 – 01/17/13 "Mood and affect are described as normal mood and full affect;" and Tr. 560 – 10/27/14 "alert and cooperative; normal mood and affect; normal attention span and concentration.")

18

In addition to the inconsistency in Dr. Bigler's own treatment notes, the ALJ found that additional medical evidence failed to show mental limitations.  Looking at the decision as a whole, this finding is also supported by substantial evidence.  Moreover, Boozer fails to point this court to any treatment notes from any physician demonstrating a mental health limitation.[5] ECF Doc. No. 12-2, Page ID# 727-37.

It was also proper to discount Dr. Bigler's opinion regarding Boozer's mental health, in part, because Dr. Bigler was not a mental health specialist.  See 20 C.F.R. § 404.1527(c)(5) (identifying "specialization" as a consideration in determining that weight to assign to a treating source's opinion); See also *Hankins v. Comm'r of Soc. Sec.,* No. 2:14-CV-68, 2015 WL 770311, at *11 (S.D. Ohio Feb. 23, 2015), *report and recommendation adopted,* No. 2:14-CV-068, 2015 WL 1412497 (S.D. Ohio Mar. 24, 2015) (finding that it was appropriate for the ALJ to discount the primary care physician's opinion, in part, because he was not a mental health specialist).  In summation, the ALJ provided "good reasons," for assigning "no weight" to Dr. Bigler's opinion on Boozer's mental health limitations.

### ii.    Physical limitations

With regard to physical limitations, Dr. Bigler opined that Boozer could not sit, stand, or walk for 30 minutes; could lift less than 5 pounds, could not reach above shoulder level but could use hands for simple grasping.  (Tr. 582)  The ALJ provided "reduced weight" to Dr. Bigler's opinion on Boozer's physical limitations, explaining:

> The physical limitations described by Dr. Bigler are also out-of-keeping with the mild objective evidence in the record, as discussed above.

---

[5] The court's own examination of the record backs up this conclusion; there is no evidence in the record that Boozer demonstrated mental health limitations.  In fact, Boozer was frequently noted as having no psychiatric/psychological concerns.  See e.g., (Tr. 270 "cooperative, appropriate mood & affect;" Tr. 278 "alert and oriented to person, place, time, and situation;" Tr. 282 "cooperative, appropriate mood & affect, normal judgment;" Tr. 490 "[o]riented to person, time, and place and normal affect.  Clear sensorium.")

(Tr. 35)  The information that the ALJ referenced ("as discussed above") consists of the earlier

portion of the ALJ's opinion where he reviewed all of Boozer's physical impairments in detail.

(Tr. 29-35)  For example, the ALJ noted that although Boozer reported worsening back pain

following his surgery,

> [m]ultiple follow-up X-rays were unremarkable other than for post operative changes
> (5F/2, 4; 15F)…In June of 2013, the claimant began a course of physical and aquatic
> therapy, and he indicated at that time that he was not aware of any restrictions that he had
> (11F)…throughout 2013 and 2014…[Boozer] reported worsening back pain radiating
> into his left leg, but his objective clinical findings continued to be generally normal other
> than for restricted flexion, including no motor, sensory, or reflex abnormality and a
> negative straight leg raising test, and X-rays showed good position of his implants and
> reasonable evidence of interbody fusion.  (12F1, 2; 15F; 16F).  An MRI performed
> September 14, 2013, showed good alignment with no stenosis, and only mild disc bulges
> at L4-L5 and L5-S1  (11F/14; 17F)…[his orthopedist] concluded that claimant's imaging
> studies showed no clear evidence of a need for further surgery.

(Tr. 31)  The ALJ further noted that as of July 2013, Boozer was no longer using an assisted

device for walking.  (Tr. 30)

The ALJ also discussed Boozer's treatment.  The ALJ noted that Boozer was being

treated with Percocet, Daypro, and Parafon Forte.  (Tr. 31)  The ALJ further noted that Boozer

decided to "deal with" his pain and apply for disability rather than seek pain management

services, removal of his hardware, or obtain placement of a spinal cord simulator.  (Id.)  The ALJ

also discussed Boozer's physical therapy, noting that Boozer did not complete his treatment.

Boozer informed the therapist that he missed half of his therapy appointments and did not

complete his home exercises because of demands at home.  (Id.)  The therapist informed Boozer

that he would need to complete the exercises and attend his sessions to get the full benefit.  (Id.)

Boozer then told his doctor that the therapy was aggravating his symptoms, so the doctor

discontinued it.  (Id.)

At Boozer's examination in March 2015, Dr. Bigler found "no focal neurological deficits, and normal sensation, reflexes, coordination, muscle strength and tone."  (Tr. 31, 600)  Boozer reported to Dr. Bigler on that same visit that he was able to stand without pain, stand long enough to cook, pull his pants on, walk around more, and bend down and get things out of the refrigerator.  (Tr. 597)  The ALJ noted that Boozer's current treatment consists of pain medication and muscle relaxers.  (Tr. 31, 601-02)

Finally, the ALJ also gave weight to the functional examination conducted by Dr. Cooper.  (Tr. 36)  Upon examination, Dr. Cooper found decreased flexion of the lumbar spine but all other physical tests were normal.  (Id.)

Based on a review of the entire opinion, the ALJ's discussion of the medical records along with his finding that Dr. Bigler's opinion was not based on objective findings and/or was not consistent with other evidence is supported by substantial evidence in the record.  "The opinion of a treating physician is entitled to greater weight only if it is based on objective medical findings, and is not contradicted by substantial evidence to the contrary."  *Gribbins v. Comm'r Soc. Sec. Admin.,* 37 F. App'x 777, 779 (6th Cir. 2002) (Internal quotations omitted).  Thus, the ALJ provided good reasons for discounting Dr. Bigler's opinions.

### 2.     Treating Physician – Dr. Viau

The ALJ also reviewed several opinions issued by Boozer's orthopedic surgeon - Dr. Viau.  The first opinion is contained in a March 18, 2013, treatment note.  In that note, Dr. Viau indicated that Boozer was precluded from "bending, twisting, or heavy lifting."  Tr. 335.  The ALJ stated that although the restrictions were issued while Boozer was recuperating from back surgery and his abilities were expected to improve, they were entitled to "some weight."  Ultimately, the ALJ fashioned a RFC somewhat consistent with these findings.  The RFC found

that Boozer could complete light work, defined by the regulations as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 404.1567.  The ALJ also found that Boozer could not crawl or climb ladders, ropes, or scaffolds.  (Tr. 28-29)  The ALJ further found that Boozer could only occasionally climb ramps and stairs; balance, stoop, kneel, crouch; and use bilateral lower extremities for operation of foot controls.  (Id.)

On October 2, 2013, Dr. Viau issued an opinion that Boozer could not engage in prolonged sitting or standing; could not push/pull, lift, or reach above shoulder level; but could complete simple grasping and fine manipulation.  (Tr. 580)  Dr. Viau also stated that Boozer was "unable to work" but could engage in job searching and skills training.  (Tr. 581)

On June 11, 2014, Dr. Viau again reported that Boozer was unable to work.  (Tr. 577) Dr. Viau also included several other restrictions but the parties have differing interpretations as to what that opinion states (which will be discussed below).  The ALJ gave the October 2013 and June 2014 opinions "limited weight" finding that they were "not supported by Dr. Viau's treatment records, which indicate no more than mild objective findings on imaging studies and his examination of the claimant, as discussed above."  (Tr. 35)

With regard to Dr. Viau's most recent opinion, Boozer asserts that the opinion provides that he could do "no **bending**, lifting, or sitting greater than 15 minutes."  ECF Doc. No. 12, Page ID# 717 (emphasis added).  Interpreting the same language, the ALJ believed the language read "no **heavy** lifting, and cannot sit for more than 15 minutes."  (Tr. 35)  In his briefing, Boozer simply states his interpretation of Dr. Viau's handwriting.  He did not point out the discrepancy between his interpretation and the ALJ's or argue that reversal was warranted based on this discrepancy.

22

The parties agree that the opinion states no sitting for greater than 15 minutes.  The parties also agree that the opinion has a "lifting" restriction.  Where the parties disagree is the interpretation of the second word.  The ALJ interpreted the second word as "heavy," whereas Boozer interprets the second word as "bending."  The second word is illegible but Boozer's interpretation appears to be more plausible.

The ALJ's interpretation of the illegible word appears to be incorrect because there is a slash in between no and lifting ["No (illegible) \ Lifting…"]  Therefore, it is doubtful that the statement would read "No Heavy \ Lifting" because there is slash in between the two words.  Moreover, the top of the first letter in the illegible word is rounded like the top of a B (and does not look like the top of an H) and the second last letter in the word is raised high on one side like a "d" and does not have equally tall sides like a "v."  Therefore, Boozer's interpretation appears more likely (i.e., that the illegible word is "Bending") and the phrase would read as "No Bending \ Lifting \ no Sitting x 15 minutes"  However, Boozer's interpretation is not entirely accurate either.  Boozer asserted that the phrase read, "No bending \ No lifting \ No sitting x 15 minutes" but clearly there is not a "no" in front of the word lifting.  Therefore, the phrase would read "No bending \ lifting \ no sitting x 15 minutes."  We will address all of these in turn.

### a.    Bending

If Boozer's interpretation of Dr. Viau's handwritten limitations is accurate, The ALJ failed to recognize that Dr. Viau's June 2014 opinion included a "no bending" limitation.  However, such an error was harmless because the ALJ addressed this issue elsewhere in his decision.

First, the ALJ addressed a bending limitation in Dr. Viau's March 2013 opinion.  The ALJ acknowledge that Boozer was expected to improve but gave "some weight" to Dr. Viau's

23

opinion.  He noted that a RFC with a light exertional level (including only occasional stooping/crouching and no crawling) was "generally consistent with these restrictions, taking into consideration the claimant's improvement with recovery from the surgical procedure itself." (Tr. 34-35)  Second, the ALJ also addressed a bending limitation in Dr. Viau's October 2013 opinion.  In that opinion, Dr. Viau stated that Boozer's pain was aggravated by walking, standing, and bending and that his prognosis was poor.  (Tr. 35)  However, the ALJ gave only "limited weight" to that opinion.  The ALJ found that it was not supported by Dr. Viau's treatment notes that indicated no more than mild findings on imaging studies and his examinations of Boozer.  (Id.)  As the ALJ pointed out, the only objective finding on treatment notes and the consultative examination was decreased or restricted flexion.  (Tr. 31, 36)  The ALJ appeared to account for this in his RFC by requiring only occasional stooping and crouching, and no crawling.  Third, the ALJ acknowledged Boozer's March 2015 self-report that he was able to dress without assistance and bend to get things from the refrigerator.  (Tr. 31)  Fourth, the ALJ gave weight to the most recent opinion of the state agency consultant who found that Boozer could only crouch (i.e. bend at the knees) or stoop (i.e. bend at the waist) occasionally.[6]  (Tr. 36, 83)

It would be pointless to remand this decision for the ALJ to address Dr. Viau's 2014 bending limitation as the ALJ sufficiently addressed the bending issue throughout his decision. As the Sixth Circuit explained:

> Generally, however, we review decisions of administrative agencies for harmless error. *Heston v. Comm'r of Soc. Sec.,* 245 F.3d 528, 535 (6th Cir.2001); *NLRB v. Wyman– Gordon Co.,* 394 U.S. 759, 766 n. 6, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969) (noting that

---

[6] For the definitions of crouching and stooping see Tr. 71; SSR 85-15; *Robinson v. Barnhart*, 183 F. App'x 451, 454 (5th Cir. 2006).

24

courts are not required to "convert judicial review of agency action into a ping-pong game" where "remand would be an idle and useless formality").

*Rabbers v. Comm'r Soc. Sec. Admin.,* 582 F.3d 647, 654–55 (6th Cir. 2009).  Here, the June 2014 bending limitation was merely cumulative.  The ALJ considered and addressed evidence relating to a bending restriction and gave the restriction partial credit limiting Boozer to only occasional crouching and stooping.  Moreover, in a visit almost a year after Dr. Viau's opinion was issued, Boozer admitted that he was able to bend at times.  Based on all of the above, the ALJ's determination that Boozer could stoop and crouch occasionally was supported by substantial evidence in the record.  Thus, remanding this determination due to the discrepancy over Dr. Viau's handwriting in one of his several opinions would be a needless formality.

### b.    Lifting

Contrary to what the ALJ stated, Dr. Viau's opinion did not read "no heavy lifting." However, the opinion also did not state "no lifting" as Boozer suggested because the word "no" did not precede the wording lifting as it did for bending and sitting.  (Tr. 577)  ("No (illegible) \ lifting \ no sitting x 15 minutes.")  Thus, a plain reading of the terms suggests that Boozer could perform lifting.  If that is the case, the RFC did not contradict the opinion and the Commissioner's decision should be upheld.

However, even if the court interprets the opinion as recommending, "no lifting," that would still not require a remand.  The ALJ analyzed a no lifting limitation in Dr. Viau's October 2013 opinion and addressed Dr. Bigler's May 2013 opinion that Boozer could lift less than five pounds.  (Tr. 35)  As discussed fully in the prior section, the ALJ's decision to discount the extreme lifting limitation was supported by substantial evidence in the record.  As the ALJ pointed out, objective clinical findings, X-rays, and MRIs contained normal findings.  Boozer does not point to any objective evidence to support a lifting limitation and the undersigned's

review of the evidence fails to uncover any.  An ALJ is permitted to discount an opinion that is unsupported by evidence.  20 C.F.R. § 416.927  ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion.")  Further, to the extent Boozer's lifting limitations were founded on his self-reports, the ALJ found that Boozer's self-reported statements were not fully credible.  (Tr. 29-30).  Thus, the undersigned finds no reason for remand on this issue.

### c.      Remaining Limitations

Finally, both parties agree that Dr. Viau's 2014 opinion contained a limitation that Boozer could not sit for longer than 15 minutes.  Dr. Bigler issued a similar opinion, determining that Boozer could not sit for 30 minutes.  (Tr. 35)  As discussed above, the ALJ provided "good reasons" for discounting Dr. Bigler's opinion and a similar analysis applies to Dr. Viau's opinion.  Furthermore, the ALJ discounted Dr. Viau's opinions because they "were not supported by [his] treatment records, which indicate no more than mild objective findings on imaging studies and his examination of the claimant, as discussed above."  (Tr. 35)  The ALJ pointed out that other than restricted flexion, Boozer's objective findings continued to be normal including no motor, sensory, or reflex abnormality and a negative straight leg-raising test.  (Tr. 31)  The ALJ also noted X-rays showing good position of the implants and reasonable evidence of interbody fusion and an MRI showed good alignment and no stenosis with mild disc bulges. (Id.)  In fact, the same day that Dr. Viau issued his most recent opinion, Dr. Viau stated that in treatment notes that the objective medical tests showed "no clear evidence that further surgery was in order… [and] reasonable evidence of a posterolateral interbody fusion."  (Tr. 31, 549)  Dr. Viau concluded that Boozer's treatment options were either (1) a referral to chronic pain

management, (2) living with the pain, and (3) removal of hardware and inspection of fusion. (Id.)  At that visit and at his prior visit three months earlier, Boozer chose to wait and "just try to deal with the pain."  (Tr. 31, 549-50)  The ALJ determined that "if the claimant's symptoms and limitations were as severe as he alleged, he would have been willing to undergo the recommended treatment in order to obtain some measure of relief."  (Tr. 34)

The ALJ also noted noncompliance with the physical therapy that Dr. Viau ordered.  The ALJ pointed out that Boozer missed half of his therapy appointments and did not follow his home exercise schedule.  (Id.)  Although, Boozer told Dr. Viau that the therapy aggravated his pain, the ALJ noted that Boozer's "therapy records clearly indicate [his noncompliance] was because it was inconvenient for him due to the demands of his busy household."  (Id.)  This determination is supported by the physical therapists notes.  (Tr. 501)  (Boozer "state[d] that it is very difficult for him to do his exercises at home due to demands of his wife and children, and states that is why he had to cancel his pool appts as well.")

As to Dr. Viau's opinion that Boozer was "unable to work," the ALJ need not adopt this conclusory determination.  (Tr. 36); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir.1984). According to 20 C.F.R. § 404.1527(d)(1), the Social Security Commissioner makes the determination whether a claimant meets the statutory definition of disability.  This necessarily includes a review of all the medical findings and other evidence that support a medical source's statement that one is disabled.  "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."  Id.

Based on all of the above, the ALJ gave good reasons for providing limited weight to Dr. Viau's opinions supported by substantial evidence in the record.  In addition, to the extent that the ALJ did not address parts of the 2014 opinion due to the handwriting discrepancy, the ALJ's

mistake was harmless error because the ALJ addressed those issues elsewhere in the opinion.

An examination of the record as a whole provides further support for the ALJ's determination.  *Nelson v. Comm'r of Soc. Sec.,* 195 F. App'x 462, 470 (6th Cir.2006) (citing *Wilson,* 378 F.3d at 547; *Hall v. Comm'r of Soc. Sec.,* 148 F. App'x 456, 464 (6th Cir.2005); *Vallier v. Comm'r of Soc. Sec.*, No. 3:13 CV 651, 2014 WL 991901, at *15 (N.D. Ohio Mar. 13, 2014).  In March 2015, Boozer reported that, when medicated, he could stand without pain, dress without assistance, walk around more, stand long enough to cook, and bend to get things from the refrigerator.  (Tr. 31, 597)  It was also reported at that time, that Boozer had no focal deficits, and normal sensation, reflexes, coordination, muscle strength, and tone.  (Tr. 31, 600)  The ALJ also gave significant weight to the consultative examination performed by Dr. Cooper that elicited normal results except for some decreased flexion of his lumbar spine.  (Tr. 36, 484-87)  The consultative examiner's findings were consistent with the examinations of Dr. Viau who noted only pain with lumbar motion or some restricted lumbar flexion.  (See e.g., Tr. 507-10, 548-51)

As to Boozer's allegations regarding the intensity, persistence, and limiting effects of his symptoms, the ALJ found Boozer was "not fully credible."  (Tr. 30)  The ALJ explained that Boozer performed part-time work at the medium exertional level until early 2013, more than six months after he alleges he became disabled.  (Tr. 33)  The ALJ also noted some inconsistencies in Boozer's self-reports.  For example, Boozer testified that he weighed 185 pounds at the time he applied for benefits and had undergone a significant weight gain due to his alleged inactivity (resulting in his weight increasing to 225 pounds).  However, the ALJ pointed out that Boozer

averred at the time he filed his claim that he weighed 235 pounds.[7] (Tr. 34, 49)  The ALJ also noted that despite claiming that he never held a driver's license, Boozer reported on a disability report that he could no longer drive stick shift due to his impairments.  (Tr. 34)

Based on all of the above, the ALJ's determination that the examination notes and testing were not consistent with the severe restrictions imposed by Dr. Viau is supported by substantial evidence in the record.

### 3.      Consultative examiner & state agency medical consultants

On August 28, 2013, Boozer underwent a consultative exam with Marsha D. Cooper, M.D.  Upon examination, Dr. Cooper found that Boozer exhibited decreased flexion of his lumbar spine.  Otherwise, Boozer's examination yielded normal results.  The ALJ gave these clinical findings "significant weight," as they were not inconsistent with the ability to perform light work as assessed elsewhere in the decision.  (Tr. 36)  As discussed elsewhere in the opinion, the findings were consistent with the examinations of Dr. Viau, also noting only decreased flexion.  (Tr. 31)  ("[O]bjective clinical findings continued to be normal other than for restricted flexion.")

Two state agency medical consultants also reviewed Boozer's medical record and issued opinions.  In September 2013, Michael Lehv, M.D., reviewed the evidence of record and noted that Boozer had undergone surgery for his back.  (Tr. 64-74)  Dr. Lehv also noted Boozer's continued claims of pain and a "slight decreased in flexion" of his lumbar spine.  (Tr. 69)  Dr. Lehv concluded that Boozer was not disabled and was capable of performing light work with the following limitations:  occasional lifting/carrying of 20 pounds, frequently lifting/carrying 10

---

[7] At the hearing, Boozer was questioned about this discrepancy.  He testified that the averment on the initial claim was inaccurate.  (Tr. 49)  However, a doctor's note from April 2013 listed Boozer's weight as 242 pounds at that time.  (Tr. 479)

pounds, standing/walking 6 hours in an 8 hour day, sitting 6 hours in an 8 hour workday, occasional climbing ladders/ropes/scaffolds, occasional stooping, frequent crawling, and avoidance of all exposure to hazards.  (Tr. 71-72)  Two months later, Lynne Torello, M.D., again reviewed the evidence of record.  (Tr. 76-86)  Dr. Torello similarly concluded that Boozer was not disabled and he could perform a light range of work.  (Tr. 85)  However, she concluded that Boozer could not climb ladders/ropes/scaffolds, could only occasionally climb ramps/stairs, kneel, crouch, or crawl.  (Tr. 83)  The ALJ indicated that he gave "greater weight" to Dr. Torello's opinion because it was "more consistent with the medical evidence of record as a whole… [including] consideration of subsequent evidence and the claimant's testimony."  (Tr. 36)

Boozer argues that the ALJ erred by failing to discuss all regulatory factors relating to these opinions.  However, as discussed in detail above, the ALJ is not required to discuss each regulatory factor.  Furthermore, it is not error to defer to the opinion of non-treating physicians over that of treating sources.  As the Sixth Circuit recognized in *Gayheart*,

> To be sure, a properly balanced analysis might allow the Commissioner to ultimately defer more to the opinions of consultative doctors than to those of treating physicians. Soc. Sec. Rul. No. 96–6p, 1996 WL 374180, at *3 ("In appropriate circumstances, opinions from ... psychological consultants ... may be entitled to greater weight than the opinions of treating or examining sources."). But the regulations do not allow the application of greater scrutiny to a treating-source opinion as a means to justify giving such an opinion little weight.

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 379–80 (6th Cir. 2013).  In *Gayheart*, the Sixth Circuit reversed the ALJ decision because the ALJ justified giving lesser weight to a treating physician based on inconsistencies in that opinion, yet ignored more flagrant inconsistencies in the non-treating sources' opinion.  That is not the case here, the ALJ's determination that the non-treating physician's opinions are more consistent with the record is supported by substantial

30

evidence in the record.  Medical examinations showed no more than some restricted flexion that was accounted for in the RFC.  Moreover, contrary to Boozer's suggestion, the ALJ did not rely on the opinions of the non-treating physicians as the only form of conflicting substantial evidence.  ECF Doc. No. 12, Page ID# 719.  For all of the above reasons, the undersigned concludes that the ALJ properly analyzed the opinions of the non-treating sources.

## VII.    Recommendation

The court should find that Boozer has not demonstrated a basis upon which to reverse or remand the Commissioner's decision.  I recommend that the final decision of the Commissioner be **AFFIRMED**, pursuant to 42 U.S.C. §405(g).

Dated: April 27, 2017

Thomas M. Parker
United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).  See also *Thomas v. Arn,* 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).